UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

IN THE MATTER OF THE APPLICATION )     CASE NO.: 8:18-cr-1035-KFM
OF THE UNITED STATES OF AMERICA )
FOR AN ORDER AUTHORIZING A SEARCH )     UNDER SEAL
WARRANT OF INFORMATION MAINTAINED )
BY CELLCO PARTNERSHIP D/B/A VERIZON )
WIRELESS, RELATIVE TO TARGET )
TELEPHONE BEARING TELEPHONE )
NUMBER 305-401-3870 )

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Matthew C. Witt, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of my application for a search warrant for the stored contents of electronic communications (including both text messages and picture content) of telephone assigned number 305-401-3870 ("TARGET TELEPHONE"). The TARGET TELEPHONE is serviced by Cellco Partnership D/B/A Verizon Wireless ("Verizon Wireless"). The contents of the electronic communications of TARGET TELEPHONE are stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07912. I seek a search warrant under 18 U.S.C. §§ 2703(a) and Federal Rule of Criminal Procedure 41 to require Verizon Wireless to disclose the contents of electronic communications that are in electronic storage for the TARGET TELPHONE.

2. Pursuant to Section 2703(a), a "governmental entity" may require "a provider of electronic communication services" to disclose "the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for 180 days or less, only pursuant to a warrant" issued under the Rules of Criminal Procedure by a "court of competent jurisdiction."

    a. The Federal Bureau of Investigations is a governmental entity. *See* 18 U.S.C. § 2711(4).

b. Verizon Wireless is a provider of electronic communication services. *See* 18 U.S.C. § 2510(15)

c. Text messages are electronic communications. *See* 18 U.S.C. § 2510(12).

d. If requested, Verizon Wireless maintains in an electronic communications system (18 U.S.C. § 2510(14)) the contents (18 U.S.C. § 2510(8)) of certain electronic communications (18 U.S.C. § 2510(12)) associated with a cellular telephone. *See* 18 U.S.C. §2703(f). In this instance, Verizon Wireless has been asked to retain text messages associated with the TARGET TELEPHONE via a preservation request provided by the FBI on October 24, 2018.[1] The date range is less than 180 days from the date of this affidavit and the accompanying applications.

e. This Court is a court of competent jurisdiction because it has jurisdiction over the offenses being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

3. Affiant is a Special Agent with the FBI currently assigned to the Columbia Field Office, Greenville Resident Agency. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of section 2510 (7) of Title 18 United States Code, and section 878 of Title 21 United States Code, and am empowered by law to conduct investigations, to execute warrants issued under the authority of the United States and to make arrest for offenses enumerated in Section 2516 of Title 18, and Title 21 of the United States Code. Affiant has been employed as a Special Agent with the FBI since May, 1991. As part of your Affiant's law enforcement duties, Affiant is statutorily charged with investigating federal criminal violations, including the sale of illegal drugs and related violations of federal law. Affiant has been the investigating case agent involving numerous federal violations to include sale and distribution of illegal narcotics, firearms violations and money laundering. In the course of these investigations,

---

[1] The preservation letter in question (dated October 24, 2018) requested that text messages placed or received on or between October 13, 2018 and October 24, 2018, be retained. In discussions with Verizon Wireless, the FBI has learned that the ability to preserve text messages is contingent on a number of different technological factors, and although Verizon Wireless will accept preservation letters, they may or may not (contingent on various technological factors including system limitations, system outages, and upgrades) be able to complete said preservation. The time period for which said messages are actually able to be retrieved by Verizon Wireless is usually in the area of 5 to 15 days from the date on which a preservation letter is received. Verizon Wireless (if able to do so) will retain text messages and release them to a law enforcement entity only through proper legal process, which in this instance would be a search warrant.

Affiant has obtained numerous search warrants, arrest warrants, and orders for electronic interception of communications under Title III.

4. As part of the aforementioned criminal investigations, Affiant has training and experience dealing with electronic evidence and has prepared multiple search warrant affidavits and supporting warrants for information maintained by telephone and internet service providers and other companies involved with electronic data storage. I have received training, both formal and informal, in the investigation of drugs and firearms violations, and have worked with numerous experienced law enforcement officers investigating the sale and distribution of illegal drugs and guns. I am familiar with much of the terminology and distribution methods used by drug and gun traffickers, as well as the methods of packaging, transporting, and ingesting various types of controlled substances.

5. Based upon my training and experience, I know the following:

   a. Drug traffickers regularly maintain and use wireless telephones, which are used in furtherance of a multitude of illegal endeavors including but not limited to smuggling, distribution, and money laundering.

   b. Drug traffickers frequently purchase such telephones as pre-paid devices (not requiring the consumer to provide identification at the time of purchase), which allow the respective trafficker to maintain the devices in relative anonymity.

   c. Members of drug organizations frequently purchase and discard telephones within short periods of time in order to avoid law enforcement detection. The discarding of a telephone can occur even sooner than planned, in the event that an occurrence such as a law enforcement action results in a potential security breach for the organization.

   d. Drug traffickers often utilize short message service (SMS, also known as text messaging) as opposed to traditional voice calls, in order to avoid telecommunications wherein the trafficker's voice could be recognized by law enforcement agents conducting a wiretap, and to make further use of coded messaging, designed to thwart detection or investigation by law enforcement.

   e. Drug traffickers and drug couriers frequently maintain contact with one another via telephone or SMS, in order to ensure the integrity of smuggled drugs or drug proceeds while the contraband is in transit. Additionally, I have learned that drug traffickers and couriers will maintain communication with suppliers or customers

via SMS for varying periods of time (days, weeks, months, etc) in lieu of traditional voice calls.

f. In my experience and through my conversations with members of their court order group, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public, and that stored electronic communications, including text messages for Verizon Wireless subscribers may be located on the computers of Verizon Wireless. Further, I am aware that computers located at Verizon Wireless contain information and other stored electronic communications belonging to unrelated third parties.

g. Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including text messages, that have been sent or received by subscribers, can be stored by Verizon Wireless for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

h. Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved. Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.

6. The facts in this affidavit come from your Affiant's personal observations, training, experience, and information obtained from other law enforcement personnel. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## BACKGROUND INVESTIGATION

7. Beginning as early as 2016, law enforcement in the Greenwood County, South Carolina and surrounding areas have seen a steady rise in the number of opioid abuse cases and a marked increase in the number of drug overdose deaths and overdose non-fatalities attributed particularly to heroin and fentanyl toxicity. Based on Sources of Information (SOI), Confidential Source (CS) information and undercover operations and an ongoing financial investigation, law enforcement has identified, Detric Lee McGowan ("MCGOWAN"), his associates, Jamal LATIMER ("LATIMER") and Donald Thomas, Jr. ("THOMAS") and a network of distributors as high-volume counterfeit pill suppliers in the Greenwood, South Carolina area and elsewhere.[2] Agents believe McGowan's drug trafficking organization (DTO) distributes multi-kilogram quantities of cocaine and heroin and mass produces counterfeit opioid pills from fentanyl-laced heroin and fentanyl, both controlled substances, for distribution to lower level distributors and opioid abusers.

## PROBABLE CAUSE

8. In September 2018, a SOI[3] for the Drug Enforcement Administration (DEA), reported to agents of the Las Cruces, New Mexico Resident Office that an individual from South Carolina, identified as Jamal LATIMER, contacted a Mexican drug trafficker known to the SOI seeking to purchase multi-kilogram quantities of heroin and cocaine. On September 25, 2018, at the direction of agents in Las Cruces, New Mexico, the SOI made a consensually recorded call to the TARGET TELEPHONE to discuss the details of the impending drug transaction.

9. On October 3, 2018, LATIMER flew from South Carolina to Las Cruces to meet with the SOI to further discuss and finalize the terms of the transaction. Upon arrival at the airport in New Mexico, LATIMER, using the TARGET TELEPHONE, contacted the SOI. DEA Task Force Officers Adrian Parra (UCA#1) and Victor Madrid (UCA #2), acting in an undercover capacity drove to the airport to pick up LATIMER. UCA #1 translated for UCA#2,

---

[2] McGowan was convicted 1997 of conspiracy to distribute and distribution of cocaine base. McGowan sustained a second federal court conviction in 2009 for conspiracy to distribute and distribution of cocaine. McGowan completed his last term of supervised release July 8, 2017. McGowan purports to be a nightclub party promoter for at least two night clubs in Greenwood, the Elite Lounge and The Vault.

[3] The SOI is cooperating with law enforcement in exchange monetary payment. The SOI has provided information in the past concerning multiple investigations that has proven to be credible and reliable.

who posed as the Spanish-speaking SOI. All conversations, from the initial meeting at the airport, during the subsequent car ride to dinner, the dinner meeting and the ride to LATIMER's hotel, between LATIMER and the undercover agents, was recorded by the UCAs.

10. During the recorded meeting, LATIMER associated himself with the Elite Lounge and The Vault, negotiated a $760,000 deal that included the delivery ten (10) kilograms of cocaine for $28,000 per kilogram and ten (10) kilograms of "China White[4]" heroin for $48,000 per kilogram from Mexico to South Carolina.

11. Also during the October 3, 2018 recorded discussions and negotiations concerning the quality, price and delivery of the impending cocaine and heroin shipment, LATIMER, using the TARGET TELEPHONE's FaceTime application, contacted an individual he (LATIMER) identified as his "brother" and as an individual involved in negotiating the drug transaction. According to the LATIMER, the reason his "brother" did not travel from South Carolina to Las Cruces with him (LATIMER) was because his "brother" is afraid to fly. Based on the appearance of the person on the TARGET TELEPHONE screen, agents believe that "brother" is a reference to THOMAS.

12. On October 10, 2018, the LATIMER, using the TARGET TELEPHONE, contacted the UCA#1 for an update on the delivery of the cocaine and heroin to him (LATIMER) in South Carolina. UCA#1 advised LATIMER that he would get back to LATIMER with a delivery date.

13. On October 20, 2018, at 8:46 a.m., the UCA#1, sent a text message to the TARGET TELEPHONE to update LATIMER on the status of the delivery. The message read: "it's on its way, left earlier this morning." On October 21, 2018, starting at 5:43 p.m., the UCA#1 exchanged the following text messages with the TARGET TELEPHONE:

| | |
|---|---|
| UCA PHONE: | "hey bro head up everything still going good." (*confirms LATIMER is still plans to go forward with previously negotiated drug deal*). |
| TARGET TELEPHONE: | "Yes what day you thinking." (*Yes, inquired as to date drugs will be delivered*) |

---

[4] China white is a term used to refer to pure or high grade heroin and heroin mixed with the synthetic opioid fentanyl.

| UCA PHONE: | "Looks like on schedule for Tuesday." |
| TARGET TELEPHONE: | "Ok cool we just waiting everything counted and ready." *(LATIMER confirms he and others have money ready and Tuesday, October 23, 2018 delivery is acceptable).* |

14. On October 22, 2018, the undercover agents from Las Cruces flew to Greenville, South Carolina from Las Cruces and on October 23, 2018, the UCAs met LATIMER ostensibly for the purpose of exchanging ten (10) kilograms of cocaine and ten (10) kilograms of "China White" heroin for $760,000. LATIMER told the undercover agents that he did not have the money with him and needed to go get it. Surveillance agents followed LATIMER to an apartment in Mauldin, South Carolina. After LATIMER's arrival, a silver and black Toyota Camry driven by Christopher Cunningham ("Cunningham") and black Chevy van, driven by THOMAS arrived at the apartment. The drivers of both vehicles appeared to obtain bags from their respective vehicles and entered the apartment. While inside the apartment, LATIMER initiated communication with UCA#1, via the Facetime application, on the TARGET TELEPHONE and showed the UCAs a significant amount of U.S. currency.

15. Shortly thereafter, agents observed LATIMER, THOMAS and Cunningham exit the apartment. Agents observed Cunningham place a large duffel bag in the trunk of the Camry and observed THOMAS place a bag in the rear of the van. LATIMER, using the TARGET TELEPHONE, contacted the UCA#1 to advise he was on the way to the meet location. LATIMER was observed leaving the apartment complex immediately followed by Cunningham in the Toyota Camry. Minutes later, officers of the South Carolina Highway Patrol conducted a traffic stop of the Camry. During a search of the vehicle, officers seized $758,785 in cash found inside a duffle bag in the trunk. A similar stop of the Chevy van was conducted and located inside a suitcase was a duffle bag that contained $245,880 in cash. During each of the vehicle stops and searches, surveillance agents observed LATIMER and MCGOWAN, in a separate vehicle, arrive near and appear to monitor each operation.

## INFORMATION TO BE SEARCHED AND ITEMS TO BE SEIZED

16. This affidavit is submitted in support of an application for a search warrant of electronic communications maintained by Verizon Wireless, relative to the TARGET TELEPHONE from October 13, 2018 to October 23, 2018, or alternatively, for the period of time text messages have been preserved during the aforementioned time frame.[5]

17. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Verizon Wireless to disclose to the government copies of the records and other information described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## JURISDICTION

18. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a District Court of the United States in the District of South Carolina that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

19. I further request that the Court order that all papers in support of the applications, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

---

[5] The date range requested includes the dates referenced in this affidavit, during which the TARGET TELEPHONE was in contact with CS-1. Verizon Wireless policy is to only preserve historical text messages, rather than preserving text messages which have yet to be placed/received.

## CONCLUSION

20.     Based upon my training and experience and facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, §§ 841(a), 843(b) and 846, relating to distribution of a controlled substances, conspiring with others to distribute controlled substances, and use of a communication facility to facilitate such offenses have occurred within the District of South Carolina. Based on the forgoing, I request that the Court issue the proposed search warrant authorizing a search of the information described in Attachment A for evidence of these crimes, as described in Attachment B.

                                                Special Agent Matthew C. Witt
                                                Federal Bureau of Investigations

SWORN to and SUBSCRIBED before me
this 1st day of November, 2018.

KEVIN F. MCDONALD
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information from October 13, 2018 to October 23, 2018 for **TARGET TELEPHONE** 305-401-3870 that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07912.

# ATTACHMENT B

## Particular Items to be Seized

**I.  Information to be searched**

(a) All text and multimedia messages, including audio, video, pictures, date and time of messages, associated logs, and identification numbers associated with the handsets sending and receiving the messages;

(b) associated logs, and identification numbers associated with the handsets sending and receiving the messages from October 13, 2018 to October 23, 2018 for **TARGET TELEPHONE** 305-401-3870;

(c) All transactional information of all activity of the telephones and /or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations between the dates of October 13, 2018 to October 23, 2018 for **TARGET TELEPHONE** 305-401-3870;

(d) Records of incoming and outgoing telephone calls for the target accounts between October 13, 2018 to October 23, 2018 for **TARGET TELEPHONE** 305-401-3870;

(e) Subscriber information for the account holder, including a copy of any cellular application and/or credit applications, and documents showing payment for the account.

**II.  Information to be seized by the government**

All information described above in Section I that constitute evidence of violations of 21 U.S.C. §§ 841(a), 843(b) and 846.